

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 13, 2019**

*Mark X. Mullin*

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **ROOFTOP GROUP USA, INC.** | § | **CASE NO. 19-44234 -MXM-7** |
| DEBTOR | § | |

### ORDER AUTHORIZING TRUSTEE TO SELL INVENTORY
### OF DRONES FREE AND CLEAR OF LIENS

On November 13, 2019 this Court heard the Chapter 7 trustee's motion to sell property of the estate free and clear of liens with liens to attach to the proceeds. Based on the trustee's testimony, the agreement of the secured creditors and absence of any objection, the Court finds that it is in the best interest of the estate to approve the trustee's motion to sell property. It is, therefore, found and determined that:

A.     Time is of the essence in the sale of the Property. Accordingly, the waiver of any stay of this Order is appropriate and in the best interests of the Estate.

B.     Purchaser, Gordon Brothers Commercial & Industrial, LLC, which prevailed in its bid over the bid of Hilco Wholesale Solutions, is purchasing this inventory in good faith and is a good faith Purchasers within the meaning of Section 363(m) of the Bankruptcy Code and entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code.Some of the drones are marked with Star Wars logos and are subject to a license agreement with Disney Consumer Products, Inc., which Disney asserts was terminated on July 26, 2018 and Disney does not consent

to the sale of any of this debtor's products subject to Disney's license agreement. Consequently, the drones subject to a Disney license are not included in the trustee's motion to sell and Disney will move to recover the drones subject to it license.

It is, therefore,

**ORDERED** that the Trustee's Motion To Sell Property of Estate Free and Clear of Liens and Encumbrances is granted. The trustee is authorized to sell to Gordon Brothers, Inc., for $275,000, all inventory of drones and related equipment, save and except anything subject to a Disney license, located in warehouses owned by TriCon Logistics, LLC in Irving, Texas and Seattle, Washington, and by Canwest Marine in Vancouver, Canada. Seventy-five percent (75%) of the $275,000.00 Purchase Price, *i.e.* $206,250.00, shall be paid by wire transfer of immediately available funds into an account designated by the Trustee, and the remaining twenty-five percent (25%) of the Purchase Price, *i.e.* $68,750, shall be paid promptly by the Purchaser upon the later of (i) the Sale Order becoming final and non-appealable; or (ii) the Purchaser's receipt of all Purchased Assets and the payment terms in the attached Asset Purchase Agreement specifically. It is further

**ORDERED** that the sale is free and clear of liens and encumbrances with any lien to attach to the proceeds as provided in the Trustee's Motion To Sell Property. The Trustee is authorized to disburse to the secured creditors herein immediately after receipt of all sale proceeds the amounts described in the sale motion that the secured creditors, Begaline Limited, TriCon Logistics, LLC, and Canwest Marine Services, Inc., have agreed to accept as payments on their respective lien claims as follows:

| | |
|---|---|
| Begaline | $80,556.58 |
| Tricon | $72,221.21 |
| Canwest | $30,555.55 |

Any unpaid portion of these lien claims is treated as unsecured claim in this estate. It is further

**ORDERED** that the Trustee is authorized to sell whatever Intellectual Property the estate owns connected to these drones and necessary for the marketing and sale of the drones subject to this Order if the estate has any such IP although the trustee expressly disavows any knowledge that the estate has any such IP and does not represent that any exists. It is further

**ORDERED** that the balance of $91,666.66 will be retained by the estate unencumbered by any lien claims.

# # # End of Order # # #

SUBMITTED BY:

Daniel J. Sherman
SHERMAN & YAQUINTO, LLP
509 N. Montclair Avenue
Dallas, TX  75208
(214) 942-5502   (214) 946-7601
Attorneys for Chapter 7 Trustee

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*") has been entered into as of November *12*, 2019 (the "*Effective Date*") by and between Daniel J. "Corky" Sherman (the "*Seller*"), in his capacity as the Chapter 7 Trustee of Rooftop Group USA) Inc., a New Hampshire corporation and debtor under Chapter 7 of the United States Bankruptcy Code, as amended, United States Bankruptcy Court, Northern District of Texas, Ft. Worth Division, Case No. 19-44234 ("*Rooftop*" or the "*Debtor*"), and Gordon Brothers Commercial & Industrial, LLC ("*Purchaser*"). Seller and Purchaser are sometimes collectively referred to as the **"Parties"** and individually, a "*Party*."

### RECITALS

The Parties hereby acknowledge the following:

A.     On August 25, 2019 the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code, as amended (the "*Bankruptcy Code*") and Seller was appointed Chapter 7 Trustee.

B.     On the terms and conditions of this Agreement, Seller wishes to sell to Purchaser, and Purchaser wishes to purchase from Seller, free and clear of all liens, claims and encumbrances pursuant to the Sale Order, all of the Debtor's inventory as described more fully herein.

### AGREEMENT

In consideration of their respective covenants set forth herein, the Parties hereto agree as follows:

1.     Transfer of Assets.

1.1     Purchase and Sale of Assets; Excluded Assets.  On the Closing Date and on the terms and conditions hereinafter set forth, Seller shall sell, assign, and transfer to Purchaser, and Purchaser shall purchase, acquire, and accept from Seller, all of Seller's right, title and interest in and to all of the Debtor's inventory, supplies, finished goods, raw materials, work-in-process, packaging materials and other consumables of the Debtor listed on **Exhibit A**, attached hereto and incorporated herein by reference (the "*Purchased Assets*").  For the avoidance of doubt, the Purchased Assets do not include the Debtor's inventory marked with Star Wars logos or logos subject to Marvel licensing and subject to a licensing agreement with Disney Corporation. However, for further clarity, the Debtor's inventory marked with "Superman" or "Batman" logos are included in the Purchase Assets.

1.2     Abandonment.  The Purchaser may, by notice to Seller, abandon any Purchased Assets wherever located, after which the Seller may dispose of the same and retain any proceeds therefrom.  As part of the motion to approve this sale, Seller intends to seek approval of Seller's abandonment, without notice, of any Purchased Assets Purchaser notifies Seller Purchaser will abandon.  Purchaser will provide Seller with written notice of all Purchased Assets Seller is abandoning no later than two business days prior to the Closing Date.

2.      <u>Consideration to Seller</u>.

2.1      <u>Purchase Price</u>.   The total consideration for the Purchased Assets shall be $275,000.00 (the "**Purchase Price**").

2.2      <u>Payment of the Consideration</u>.   At the Closing, the Purchaser shall pay to the Seller, by wire transfer of immediately available funds into an account designated by the Seller, seventy-five percent (75%) of the Purchase Price, *i.e.* $206,250.   The remaining twenty-five percent (25%) of the Purchase Price, *i.e.* $68,750, shall be paid promptly upon the later of (i) the Sale Order becoming final and non-appealable; or (ii) the Purchaser's receipt of all Purchased Assets (subject to the adjustment in <u>Section 2.3</u> below).

2.3      <u>Adjustment</u>.   Adjustment.   To the extent any of the Purchased Assets are not located at the Warehouses or are not in good operating condition and repair, normal wear and tear excepted, the Purchase Price shall be reduced pro rata based on the cost assigned in **<u>Exhibit A</u>**.

2.4      <u>No Assumed Liabilities</u>.   Notwithstanding anything to the contrary contained in this Agreement, Purchaser shall not be obligated, and hereby disclaims any obligation, to assume, perform or discharge any Liability of any Person.   The sale of the Purchased Assets shall be free and clear of all liens, claims and encumbrances of any kind, including but not limited to amounts that may be due under any agreement pursuant to which the Purchased Inventory was manufactured.   Such liabilities, if any, shall attach to the Purchase Price and shall remain obligations of the Debtor's estate and no recovery shall be permitted as against the Purchased Assets, including but not limited to Purchaser's future proceeds of the Purchased Inventory.

3.      <u>Closing Transactions</u>.

3.1      <u>Closing</u>.   The Closing of the transactions provided for herein (the "***Closing***"), including the Purchaser's access to and Purchaser and Seller's commencement of loading the Purchased Inventory into vehicles for transit, shall take place within two (2) business days of entry of the Sale Order (the "***Closing Date***").   If the Closing Date has not occurred on or before November 15, 2019, Purchaser at its option may declare this agreement null and void.

3.2      <u>Seller's Deliveries to Purchaser at Closing</u>.   On the Closing Date, Seller shall deliver, to or for the benefit of Purchaser:

(a)      a bill of sale and assignment, in a customary form reasonably acceptable to the Purchaser, duly executed by Seller, pursuant to which Seller's right, title and interest in and to the Purchased Assets shall be assigned to Purchaser (the "***Bill of Sale***");

(b)      evidence of consent by each of the three (3) Warehouses listed in this <u>Section 3.2(b)</u> (i) confirming that each consents to removal of the Purchased Inventory stored therein and that such Purchased Inventory shall not be subject to the liens, claims and encumbrances of the Warehouse, including but not limited to warehousemen's liens that may be provided for under state law or other applicable law; and (ii) a written representation from each Warehouse as to the name, quantity and reference number, as

applicable, of all of the Purchased Assets on-hand at such Warehouse as of the Closing. The Warehouses are as follows: (i) TriCon, 4450 W. Walnut Hill Ln., Suite 100, Irving, TX 75038; (ii) TriCon, 2511 70th Ave. E, Suite D, Fife, WA 98424, and (iii) Canwest Logistics Inc., #100-6751 Westminster, Highway, Richmond BC, Canada V7C 4V4; and

(c)     any such other documents or other things reasonably requested by Purchaser or contemplated by this Agreement to be delivered by Seller to Purchaser at the Closing.

3.3     <u>Purchaser's Deliveries to Seller at Closing</u>. On the Closing Date, Purchaser shall:

(a)     pay to Seller seventy-five percent (75%) of the Purchase Price, by wire transfer of immediately available funds in accordance with <u>Section 2.2</u>; and

(b)     deliver to Seller any such other documents as Seller may reasonably request or as contemplated by this Agreement to be delivered by Purchaser to Seller at the Closing; and

3.4     <u>Termination of Agreement</u>. This Agreement may be terminated prior to the Closing (i) by mutual written consent of the Seller and the Purchaser, (ii) by Order of the Bankruptcy Court, or (iii) by Purchaser if Seller fails to provide Seller's deliveries at Closing.

4.     <u>Representations and Warranties by Seller</u>. In addition to the representations and warranties contained elsewhere in this Agreement, Seller hereby represents and warrants to Purchaser, as follows:

4.1     <u>Power</u>. Seller has all requisite power and authority to enter into this Agreement. Seller has authority to sell, assign and transfer all of its right, title and interest in and to the Purchased Assets and shall convey all of its right, title and interest in and to the Purchased Assets to Purchaser.

4.2     <u>Validity</u>. This Agreement has been duly and validly executed and delivered by Seller.

4.3     <u>No Conflicts</u>. Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions provided for herein, will result in a violation of any laws or prevent Seller from consummating the transactions hereunder. To best of Seller's knowledge, no consent, approval or authorization of, or registration or filing with, any third party is required in connection with the execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated hereby, the failure of which to obtain would have an adverse effect on the Purchased Assets or prevent Seller from consummating the transactions hereunder. To the best of Seller's knowledge, no consent, approval or authorization, other than those granted in this Agreement, are necessary for Purchaser to advertise, sell and market the Purchased Assets in accordance with <u>Section 6.1</u> hereto. To the best of Seller's knowledge, there is no proceeding or action against Seller or the Debtor that seeks to enjoin or prohibit or otherwise prevent the transactions contemplated hereby.

4.4 <u>Title and Condition of Purchased Assets</u>. Seller is hereby selling and assigning to Purchaser all of Seller's right, title and interest in, to and under the Purchased Assets, without representation or warrant, except as expressly set forth in this Agreement. To the knowledge of Seller, as of the date hereof, no third party has expressed its objection to the sale of the Purchased Assets to Purchaser.

4.5 <u>No Transfer</u>. Seller has not transferred or otherwise disposed of any Purchased Assets.

4.6 <u>No Fee</u>. Seller has not incurred any obligation for any finder's, broker's, or agent's fee in connection with the transactions contemplated by this Agreement in a manner that will result in liability on the part of Purchaser.

5. <u>Purchaser's Warranties and Representations</u>. In addition to the representations and warranties contained elsewhere in this Agreement, Purchaser hereby represents and warrants to Seller, except as set forth herein, as follows (it being understood and agreed that none of such representations or warranties shall survive or be of any further force or effect following the Closing):

5.1 <u>Organization</u>. Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of Delaware. Purchaser has all requisite entity power and authority to own, lease and operate its properties, execute and deliver this Agreement, and to perform its obligations hereunder and consummate the sale and transfer of the Purchased Assets.

5.2 <u>Validity and Enforceability</u>. This Agreement has been duly executed and delivered by Purchaser and constitutes the valid and binding obligation of Purchaser enforceable against it in accordance with its terms, except as may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting the rights of creditors generally or by equitable principles (regardless of whether considered in a proceeding at law or in equity).

5.3 <u>Broker's or Finder's Fees</u>. No agent, broker, person or firm acting on behalf of Purchaser is, or will be, entitled to any commission or broker's or finder's fees from Seller in connection with the sale and transfer of the Purchased Assets.

6. <u>Post-Closing Matters</u>.

6.1 <u>Use of Intellectual Property</u>. Without limitation, following the Closing Date, Seller shall expressly have the right to resell the Purchased Assets. Such right to resell includes the use of all brands, marks, copyrights and/or other intellectual property associated with the Purchased Assets for purposes of advertising, marketing and sale of the Purchased Assets.

7. <u>Closing Conditions</u>.

7.1 <u>Conditions to Seller's Obligations</u>. Seller's obligations hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Seller may expressly waive the same in writing:

(a) The representations and warranties of Purchaser set forth herein shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date;

(b) As of the Closing Date, Purchaser shall have made and complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement to be performed by Purchaser at, or prior to, the Closing Date;

(c) Purchaser shall have paid the portion of the Purchase Price due to Seller in accordance with <u>Section 2.2</u>, and shall have otherwise made all deliveries to Seller required herein; and

(d) The Bankruptcy Court shall have entered the Sale Order.

7.2 <u>Conditions to Purchaser's Obligations</u>. Purchaser's obligations hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Purchaser may expressly waive the same in writing:

(a) The representations and warranties of Seller set forth herein shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date;

(b) There shall have been no Material Adverse Change with the operations of the Seller between the date of this Agreement and the Closing Date;

(c) As of the Closing Date, Seller shall have made and complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement to be performed by Seller at, or prior to, the Closing Date;

(d) The Bankruptcy Court shall have entered the Sale Order, and such Sale Order shall be final and non-appealable, and include a finding that the Purchaser is a good faith purchaser under Section 363(m) of the Bankruptcy Code.

(e) Seller shall have made all deliveries to Purchaser required of it herein;

(f)     Purchaser will have received all such further consents, instruments and documents as Purchaser may reasonably request, and Seller has the right to give, for the move, effective conveyance, sale, assignment or transfer to Purchaser of title to the Purchased Assets, including but not limited to those of the Warehouses in accordance with Section 3.2(b); and

(g)     As directed by Purchaser, all Purchased Assets shall have been transferred and delivered to Purchaser, and Purchaser shall have obtained the ability to possess and control of all Purchased Assets.

8.     <u>Miscellaneous.</u>

8.1     <u>Notices.</u>  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other shall be deemed effected upon personal delivery in writing, one Business Day after being dispatched by reputable overnight courier (*e.g.*, FedEx), postage prepaid, or in the case of delivery by electronic transmission, as of the date of the electronic transmission. Notices shall be addressed as set forth below, but each Party may change his address by written notice in accordance with this <u>Section 8.1</u>.

If to Seller:

Daniel J. "Corky" Sherman, solely in his capacity as Chapter 7 Trustee
509 N. Montclair Ave
Dallas, Texas 752008
Corky@syllp.com

With a copy to (which shall not constitute notice):

Sherman & Yaquinto, L.L.P.
Daniel J. Sherman
509 N. Montclair Avenue
Dallas, TX 75208-5498

If to Purchaser:

Gordon Brothers Group, LLC
Attn:  Ulos Anderson & Jim Lightburn
Prudential Tower
800 Boylston Street, 27th Floor
Boston, MA 02199
uanderson@gordonbrothers.com
jlightburn@gordonbrothers.com

With a copy to (which shall not constitute notice):

> Halperin Battaglia Benzija, LLP
> Attn: Christopher J. Battaglia, Esq.
> Julie Dyas Goldberg, Esq.
> 40 Wall Street, 37th Floor
> New York, NY 10005
> cbattaglia@halperinlaw.net
> jgoldberg@halperinlaw.net

8.2     Entire Agreement.  This Agreement and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the sale of the Purchased Assets and replace in its entirety any previously executed letter of intent.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

8.3     Modification.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto which expressly indicates the intention to modify, amend or supplement this Agreement.

8.4     Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

8.5     Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

8.6     Further Assurances.  Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto.  Without limitation, from time to time following the Closing, Seller shall execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquaintances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and their respective successors or assigns, all of the assets, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement.  Seller shall use commercially reasonable efforts to cause the transfer to Purchaser of the registration of any Domain Names held by Seller or the Debtor.

8.7     Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

8.8     Payment of Fees and Expenses.  Except as otherwise specifically provided in this Agreement, each signatory of this Agreement shall be responsible for, and shall pay, all of

its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement.

8.9     Assignments.  This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Parties may grant or withhold in their sole and absolute discretion, except that, after the Closing, Purchaser may assign this Agreement in connection with any transfer of the Purchased Assets.

8.10    Binding Effect.  This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and permitted assigns of the Parties hereto.

8.11    Applicable Law.  This Agreement shall be governed by and construed in accordance with the law of the State of New York, without reference to conflicts of laws.

8.12    Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

8.13    CONSENT TO JURISDICTION.  THE PARTIES EACH AGREE THAT ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE HEARD AND DETERMINED IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS.

8.14    Counterparts.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of facsimile or electronic pdf signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

8.15    Time is of the Essence.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

8.16    Interpretation and Rules of Construction.  In this Agreement, except to the extent that the context otherwise requires:  (a) when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated; (b) the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement; (c) whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation"; (d) the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement; (e) all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein; (f) the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms; (g) any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws; (h) references to a person

are also to its permitted successors and assigns; and (i) the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

8.17 Third Party Beneficiaries. This Agreement is intended to be solely for the benefit of the Parties hereto and is not intended to confer, and shall not be deemed to confer, any benefits upon, or create any rights in or in favor of, any Person other than the Parties hereto, and their respective permitted assigns.

8.18 Definitions. For the purposes of this Agreement, the following words and terms shall have the meaning set forth below (such meanings being equally applicable to both the singular and plural form of the terms defined). The exhibits and schedules referenced in this Section 8.18 and throughout the Agreement are deemed to be part of the Agreement and are incorporated herein by reference.

"*Agreement*" shall have the meaning set forth in the Preamble hereof.

"*Applicable Law*" means any applicable federal, state, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, requirement, notice requirement, guideline, Order, specification, determination, decision, opinion or interpretation issued, enacted, adopted, passed, approved, promulgated, made, implemented or otherwise put into effect by or under the authority of any Governmental Body.

"*Bankruptcy Code*" shall have the meaning set forth in the Recitals hereof.

"*Bankruptcy Court*" shall mean the United States Bankruptcy Court, Northern District of Texas.

"*Bill of Sale*" shall have the meaning set forth in the Section 3.2(a) hereof.

"*Business Day*" means any calendar day other than a Saturday or Sunday or a legal holiday on which banks in New York, NY are closed.

"*Closing*" shall have the meaning set forth in the Section 3.1 hereof.

"*Closing Date*" shall have the meaning set forth in the Section 3.1 hereof.

"*Debtor*" shall have the meaning set forth in the Preamble hereof.

"*Effective Date*" shall have the meaning set forth in the Preamble hereof.

"*Governmental Body*" means any: (a) nation, principality, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body or entity and any court or other

mxm7

tribunal); (d) multinational organization or body; or (e) individual, entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military or taxing authority or power of any nature.

"*Liability*" means any direct or indirect liability, indebtedness, obligation, commitment, expense, claim, deficiency, guaranty or endorsement of any sort whatsoever, whether accrued or unaccrued, absolute or contingent, matured or unmatured, liquidated or unliquidated, known or unknown, asserted or unasserted, due or to become due.

"*Lien*" means any lien, security interest, pledge, deed of trust, mortgage, charge, easement, right-of-way, encroachment, building or use restriction, conditional sales agreement, Tax assessment, option, encumbrance or other right of third parties of any sort whatsoever, whether voluntarily incurred or arising by operation of law, and includes any agreement to give any of the foregoing in the future, and any contingent sale or other title retention agreement or lease in the nature thereof.

"*Material Adverse Change*" means any change, effect, event, occurrence, development or state of facts or circumstances, that, taken individually or together with all other changes, effects, occurrences, developments or state of facts or circumstances, is, was or could reasonably be expected to be materially adverse to the Seller, the Purchased Assets or the Seller's business or operations.

"*Order*" means any order, judgment, decision, consent decree, injunction, or ruling of any Governmental Body, or any stipulation entered before any Governmental Body, that is binding on any Person or its property under any Applicable Law.

"*Parties*" shall have the meaning set forth in the Preamble hereof.

"*Party*" shall have the meaning set forth in the Preamble hereof.

"*Purchase Price*" shall have the meaning set forth in the <u>Section 2.1</u> hereof.

"*Purchased Assets*" shall have the meaning set forth in the <u>Section 1.1</u> hereof.

"*Purchased Inventory*" shall have the meaning set forth in the <u>Section 1.1(b)</u> hereof.

"*Purchaser*" shall have the meaning set forth in the Preamble hereof.

"*Sale Order*" shall mean the order of the Bankruptcy Court approving the sale of the Purchased Assets to the Purchaser, which order is not subject to stay pursuant to Bankruptcy Rule 6004 or otherwise, which order includes a finding in favor of the Purchaser pursuant to 11 U.S.C. § 363(m), which order has become final and non-appealable, and which order is in form and substance acceptable to Purchaser at its sole discretion.

"*Seller*" shall have the meaning set forth in the Preamble hereof.

"*Tax*" means any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

"*Warehouses*" shall mean each of the three (3) warehouses where the Purchased Inventory is located, each as listed in Section 3.2(c).

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

**PURCHASER:**

Gordon Brothers Commercial & Industrial,
LLC, a Delaware limited liability company

By: _____

Name: _____

Its: _____

**SELLER:**

Daniel J. "Corky" Sherman,
Solely in his capacity as Chapter 7 Trustee of
Rooftop Group USA Inc.

By: _____

Name:  Daniel J. "Corky" Sherman

**Rooftop Group USA**
**Exhibit A**
**Drone Inventory**

| Item # | Description | UPC / EA / CAS | Total Quantity | DFW | SEA | VAN |
|---|---|---|---|---|---|---|
| AT-2930 | | | 2,544 | | 2,544 | |
| H5-2405 | ATOM FPRMICRO DRONE | | 278 | 278 | 0 | 0 |
| HS-1933 | AIR COMBAT - 2.4 GHZ MOTION CONTROLLED BATTLING HELICOPTER TITANIUM/RED | EA 849826019335 | 418 | 410 | 8 | 0 |
| HS-1936 | AIR COMBAT - 2.4 GHZ MOTION CONTROLLED BATTLING HELICOPTER BLUE/GOLD | EA 849826019366 | 300 | 300 | 0 | 0 |
| HS-1939 | | | 1 | | 1 | |
| HS-1943 | MEUTRON | | 930 | 930 | 0 | 0 |
| HS-1948 | | | 4 | | 4 | |
| HS-1952 | | | 58 | | 58 | |
| HS1953 | AIR COMBAT | | 310 | 310 | 0 | 0 |
| HS-1953 | AIR COMBAT - 2.4 GHZ MOTION CONTROLLED BATTLING HELICOPTER | EA 849826019533 | 171 | 171 | 0 | 0 |
| HS-1954 | ATOM 1.0 MICRO DRONE - INDOOR/OUTDOOR WIRELESS QUADROCOPTER | EA 849826019540 | 216 | 216 | 0 | 0 |
| HS-1956 | SKY RAIDER - 2.4 GHZ INDOOR/OUTDOOR BATTLING QUADROCOPTER | | 333 | 333 | 0 | 0 |
| HS-1957 | SKY RAIDER - 2.4 GHZ INDOOR/OUTDOOR BATTLING QUADROCOPTER | EA 849826019571 | 41 | 40 | 1 | 0 |
| HS-1958 | SKY RAIDER - 2.4 GHZ INDOOR/OUTDOOR BATTLING QUADROCOPTER | EA 849826019588 | 399 | 368 | 31 | 0 |
| HS-2400 | | | 70 | | 70 | |
| HS-2405 | ATOM FPV MICRO DRONE - INDOOR/OUTDOOR WIRELESS QUADROCOPTER | EA 849826024056 | 368 | 368 | 0 | 0 |
| HS-2406 | | | 5 | | 5 | |
| HS-2409 | SKY MASTER + FPV - 2.4 GHZ BLUE QUADROCOPTER W/ LIVE VIDEO STREAMING | EA 849826024094 | 34 | 34 | 0 | 0 |
| HS-2412 | ORBIT HD BLACK - 2.4 GHZ QUADROCOPTER W/ HD CAMERA | EA 849826024124 | 264 | 249 | 15 | 0 |
| HS-2413 | ORBIT HD GREEN - 2.4 GHZ QUADROCOPTER W/ HD CAMERA | EA 849826024131 | 187 | 187 | 0 | 0 |
| HS-2414 | ORBIT HD, 508936404 | EA 849826024148 | 291 | 290 | 1 | 0 |
| HS-2416 | ORBIT HD RED - 2.4 GHZ QUADROCOPTER W/ HD CAMERA | EA 849826024162 | 518 | 486 | 32 | 0 |
| HS-2418 | ORBIT HD - 2.4 GHZ QUADROPCOPTER W/ HD CAMERA | EA 849826024186 | 45 | 45 | 0 | 0 |
| HS-2421 | | | 35 | | 35 | |

**Rooftop Group USA**
**Exhibit A**
**Drone Inventory**

| Item # | Description | UPC / EA / CAS | Total Quantity | DFW | SEA | VAN |
|--------|-------------|----------------|----------------|-----|-----|-----|
| HS-2422 | PROTON MICRO DRONE - INDOOR/OUTDOOR WIRELESS QUADROCOPTER | EA 849826024223 | 397 | 378 | 19 | 0 |
| HS-2423 | | | 180 | | 180 | |
| HS-2424 | | | 25 | | 25 | |
| HS-2425 | PROTON MICRO DRONE | | 452 | 452 | 0 | 0 |
| HS-2432 | SKY FORCE | | 170 | 170 | 0 | 0 |
| HS-2433 | SKY FORCE | | 878 | 878 | 0 | 0 |
| HS-2436 | XS T WIFI | | 24 | 24 | 0 | 0 |
| HS-2438 | PROPEL GROVITIONAND WIFI | | 196 | 196 | 0 | 0 |
| HS-2443 | GRAVITON+WIFI | | 275 | 275 | 0 | 0 |
| HS-2445 | ZIPPO NANA X2 | | 505 | 505 | 0 | 0 |
| HS-2447 | ZIPP NANO X2 | | 297 | 297 | 0 | 0 |
| HS-2448-B | ZIPP NANO X2 BLACK | | 200 | 200 | 0 | 0 |
| HS-2448-R | ZIPP NANO X2 RED | EA 849826024483 | 560 | 560 | 0 | 0 |
| HS-2450 | ZIPP NANO | | 388 | 388 | 0 | 0 |
| HS-2452 | AIR COMBAT | | 145 | 145 | 0 | 0 |
| **MISC** | **Spare Parts, Blades, Batteries, etc** | | 69,439 | | 69,439 | |
| NV-3810 | | | 44 | | 44 | |
| NV-3820 | NAVIGATOR PACE MICRO DRONE | EA 849826038206 | 7,403 | 0 | 7,403 | 0 |
| OD-2101 | ATOM MICRO DRONE RED | EA 849826021017 CAS 50849826021012 | 0 | 0 | 0 | 0 |
| OD-2108 | PROPEL SKY FORCE 2 PACK BATTLING DRONES ASSORTMENT | EA 849826021086 CAS 50849826021081 | 0 | 0 | 0 | 0 |
| OD-2111 | NEUTRON BLUE | EA 849826021116 CAS 50849826021111 | 91 | 0 | 91 | 0 |
| OD-2113 | SKYRIDER BLUE + EXTRA BATTERY | EA 849826021130 CAS 50849826021135 | 1,121 | 0 | 1,121 | 0 |
| OD-2114 | SKYRIDER RED + EXTRA BATTERY | EA 849826021147 CAS 50849826021142 | 2,034 | 0 | 2,034 | 0 |
| **PENS** | **Candidate Pens - Donald Trump and Hillary Clinton** | | 34,147 | 34,147 | 0 | |

**Rooftop Group USA**
**Exhibit A**
**Drone Inventory**

| Item # | Description | UPC / EA / CAS | Total Quantity | DFW | SEA | VAN |
|---|---|---|---|---|---|---|
| PL-1110 | | | 721 | | 721 | |
| PL-1111 | | | 176 | | 176 | |
| PL-1112 | | | 16 | | 16 | |
| PL-1350 | PL-1351/1352/1354/1355 PROPEL PROTON MICRO DRONE ASSORTMENT | CAS 849826013500 | 100 | 100 | 0 | 0 |
| PL-1390 | ATOM 1.0 MICRO DRONE | EA 849826013906 | 1,880 | 1,880 | 0 | 0 |
| PL-1391 | | | 1 | | 1 | |
| PL-1400 | SPYDER X - Palm sized high performance drone | | 4,746 | 4,746 | 0 | 0 |
| PL-1402 | SPYDER STUNT DRONE-28MC/PLT | | 5,050 | 5,050 | 0 | 0 |
| PL-1434 | CLOUD RIDER | | 85 | 85 | 0 | 0 |
| PL-1445 | | | 32 | | 32 | |
| PL-1480 | | | 93 | | 93 | |
| PL-1483 | SPYDER X | | 86 | 86 | 0 | 0 |
| PL-1486 | SPYDER ROOFTOP BRANDS | | 156 | 156 | 0 | 0 |
| PL-1511 | | | 1 | | 1 | |
| PL-1512 | | | 24 | | 24 | |
| PL-1521 | | | 46 | | 46 | |
| PL-1530* | Propel Tilt Hybrid Stunt Drone + HD Camera+ Altitude Stability RED | | 2,193 | 1,865 | 328 | 0 |
| PL-1530-SP | TILT COMPLETE SET (SPARE PART) | EA 849826015306 | 375 | 47 | 328 | 0 |
| PL-1540 | SKY MASTER WHOLE SET | EA 849826015405 | 29 | 0 | 29 | 0 |
| PL-1560 | | | 537 | | 537 | |
| PL-1601 | | | 0 | 0 | 0 | 0 |
| PL-1720 | SKY RIDER FPV COMPLETE SET TITANIUM | EA 849826017201 | 765 | 0 | 765 | 0 |
| PL-1762 | | | 2 | | 2 | |
| PL-1763-R | TUNNEL PALM DRONE RED 7379565 | EA 849826017614 CAS 50849826017619 | 7 | 0 | 7 | 0 |

**Rooftop Group USA**
**Exhibit A**
**Drone Inventory**

| Item # | Description | UPC / EA / CAS | Total Quantity | DFW | SEA | VAN |
|---|---|---|---|---|---|---|
| PL-1770 | MOVE (1318531) | EA 849826017706 | 2 | 0 | 2 | 0 |
| PL-1771 | MOVE DRONE - GREEN | EA 849826017713 | 292 | 0 | 292 | 0 |
| PL-1772 | MOVE DRONE - RED | EA 849826017720 | 301 | 0 | 301 | 0 |
| PL-4210 | | | 140 | | 140 | |
| PLM-472 | RC SNAKE (1128823) | EA 895007004720 | 103 | 0 | 103 | 0 |
| QC-0950 | MULTI PACK MOTION CONTROL UFO BLUE AND DARK GREY | EA T34292848000 | 5,712 | 5,712 | 0 | 0 |
| QC-0951 | ROCKET RC LEVICOPTER RED/SILVER | EA 601279509517 CAS T34322849000 | 5,694 | 5,694 | 0 | 0 |
| QC-0954 | | | 864 | | 864 | |
| QC-0958 | AIR CRAWLER RED | EA 601279509586 | 2,134 | 1,056 | 1,078 | 0 |
| QC-0959 | ROCKET RC AIR CRAWLER SILVER | EA 601279509593 CAS T34339180000 | 565 | 216 | 349 | 0 |
| SC-1860 | | | 5,810 | | 5,810 | |
| SC-1868 | | | 61 | | 61 | |
| SC-1869 | | | 17 | | 17 | |
| SC-2052 | | | 97 | | 97 | |
| SC-2053 | One Click | | 143 | 60 | 83 | 0 |
| SL-1814 | VIDEO TALKER | EA 50849826018142 | 49 | 0 | 49 | 0 |
| SL-1815 | SL-1815 PDQ | | 529 | 0 | 529 | 0 |
| TK-0530 | CST TANK | | 408 | 408 | 0 | 0 |
| TK-0534 | TANKS | | 1,359 | 1,359 | 0 | 0 |
| TK-0543 | TANKS | | 1,608 | 1,608 | 0 | 0 |
| VL-3500 | Velocity HD Video Drone + FPV Assorted VL-3500 | | 3,554 | 0 | 0 | 3,554 |
| VL-3510 | ATOM Micro Drone VL-3510 8pcs (2pcs for each color) | | 16 | 0 | 0 | 16 |
| VL-3517 | X01 Micro drone | | 28,124 | 0 | 0 | 28,124 |
| VL-3520 | Micro Video Drone | | 78 | 0 | 0 | 78 |

**Rooftop Group USA**
**Exhibit A**
**Drone Inventory**

| Item # | Description | UPC / EA / CAS | Total Quantity | DFW | SEA | VAN |
|---|---|---|---|---|---|---|
| VL-3540 | MAXIMUM X03 STUNT DRONE | EA 849826035410<br>CAS 849826035403 | 17,993 | 0 | 13,453 | 4,540 |
| VL-3570 | | | 98 | | 98 | |
| VL-3571 | GALACTIC X VL-3571 | | 1,640 | 0 | 0 | 1,640 |
| VL-3572 | GALACTIC X VL-3572 | | 3,376 | 0 | 0 | 3,376 |
| VL-3579 | Galactic X 1/2 Pallet VL-3579 | | 96 | 0 | 0 | 96 |
| VL-3580 | Sky Rider 2.4GHz Quadrocopter with HD Camera | | 3,028 | 0 | 0 | 3,028 |
| VL-3590 | Tilt HD+Wifi Video Drone X15 VL-3590 | | 60 | 0 | 0 | 60 |
| VL-3598 | | | 44 | | 44 | |
| VL-3610 | Tunnel drone | | 19,872 | 0 | 0 | 19,872 |
| VL-3611 | | | 5 | | 5 | |
| VL-3612 | | | 5 | | 5 | |
| VL-3630 | MAXIMUM MOVE DRONE RED/BLACK | EA 849826036325 | 26,270 | 0 | 21,860 | 4,410 |
| VL-3631 | | | 53 | | 53 | |
| VL-3632 | | | 89 | | 89 | |
| WB-4001 | BATMAN | EA 849826040018 | 272 | 272 | | |
| WB-4002 | SUPERMAN | EA 84982604002 | 13 | 8 | 5 | |
| WB-4003 | MOTION CONTROL RC FLYING BATMAN/SUPERMAN | | 1,582 | 1,582 | | 0 |
| WB-4010 | BATWING MICRO DRONE | CAS 50849826040105<br>EA 849826040100 | 7,831 | 520 | 7,311 | |
| **Grand Total** | | | **283,899** | **76,140** | **138,965** | **68,794** |